**CITY OF ALBERT LEA, Respondent,**

v.

**Paul E. TASKER Appellant.**

**No. C9–87–70.**

Court of Appeals of Minnesota.

Sept. 15, 1987.

Douglas R. Peterson, Peterson, Schlichting & Davies, Albert Lea, for appellant.

Kurt S. Fischer, Albert Lea City Atty., Albert Lea, for respondent.

Heard, considered and decided by FOLEY, P.J., and PARKER and SEDGWICK, JJ.

## OPINION

PARKER, Judge.

Appellant Paul Tasker was arrested for shoplifting and charged with misdemeanor theft in violation of Minn.Stat. § 609.52, subd. 2(1) (1986). He moved the trial court for an order dismissing the complaint on the grounds that the prosecution's failure

to retain and preserve the allegedly stolen items constituted a denial of due process of law. After an evidentiary hearing, the court denied the motion. A jury found Tasker guilty. Tasker moved the trial court to reconsider his pretrial motion and dismiss the case, to enter an order vacating the judgment of conviction and enter a judgment of acquittal on the grounds that the prosecution failed to prove guilt beyond a reasonable doubt, or to grant a new trial on the grounds specified in Minn.R.Crim.P. 26.04. The trial court denied all post-trial motions and sentenced Tasker to three days or a weekend in the county jail plus $20 in costs. Tasker's sentence was stayed pending appeal. We affirm.

### FACTS

In a Shopko store in Albert Lea, Minnesota, security officer Ted Nelson saw Paul Tasker place a fishing lure inside his shirt. He then followed Tasker through the store. At the checkout counter Tasker paid for two items in his shopping cart, but did not pay for the fishing lure in his shirt.

Nelson and Mr. Kalewenski, the store manager, stopped Tasker in the Shopko parking lot, identified themselves, and asked Tasker to return to the store. Tasker asked, "What did you see me take?"

At the security office, when Nelson asked for the fishing lure in Tasker's shirt, Tasker removed it and laid it on the desk. Nelson asked if he had any other "unpaid" merchandise. Tasker then produced two magazines from his shirt and a bottle of vitamins from his coat pocket.

Nelson photographed the four items, described each in his report and then returned them to stock. The items had these prices:

| | |
|---|---|
| Fishing lure: "The Swedish Pimple" | $1.39 |
| Magazine: *In Fisherman, Fishing Special"* | $2.95 |
| Magazine: *Radio Electronics* | $1.95 |
| Vitamins: "One-A-Day" | approx. $6.00 |

Tasker was then turned over to the police along with a copy of the report and the photograph of the items seized. The items themselves were not retained for use as exhibits at trial. Tasker did not deny any of the above events; however, he offered an explanation for what appeared to be criminal behavior. He claimed that he purchased the three items found in his shirt at another Shopko store in Austin and the bottle of vitamins at Snyder's.

Of the four items, only the lure had a sales tag with an identifying store number on it. The magazines had no tags and the vitamin bottle had been removed from its tagged box. Tasker claimed that if he had had the fishing lure he could have proved it was from another store.

### ISSUES

1. Did the state's failure to obtain physical evidence against Tasker deny him due process of the law?

2. Was sufficient evidence presented to the jury to support the jury's verdict of guilty?

### DISCUSSION

#### I

To determine whether the absence of the alleged exculpatory items denied Tasker due process of the law, the trial court looked to *State v. Hill,* 287 N.W.2d 918 (Minn.1979). In *Hill* the prosecution accidentally destroyed audio tapes which had been subpoenaed. *Id.* at 919. The defendant claimed that the tapes would enhance his credibility. *Id.* The supreme court said:

> Since we do not know if the destroyed tapes contained any evidence favorable to the defendant, we cannot determine the probable effect which the evidence would have had on the jury. What we must do, therefore, is focus on the evidence adduced at trial in an attempt to determine whether there is any reasonable possibility that the tapes would have substantially influenced the jury.

*Id.* at 920.

Nelson testified that he did not know if the lure's tag had a store number on it. If

there were a number, the evidence would still, according to the state, be inconclusive, because some merchandise in the Albert Lea store had come from the Austin store. Finally, the register tapes contradicted Tasker's story. At trial Dan Joseph, security officer for the Austin store, submitted the register tapes for the day of the arrest. He had searched them for transactions which might include the purchases Tasker claimed to have made. He found no such sales. Viewed in this light, the materiality of the fishing lure is not necessarily crucial.

There was no neglect or omission on the part of the state in its evidence-gathering. Security personnel followed standard Shopko policy, which permits the use of photographs as a record of the property actually stolen. This procedure is also authorized by Minn.Stat. § 609.523, subd. 1 (1986):

> Photographs of property, as defined in section 609.52, subdivision 1, over which a person is alleged to have exerted unauthorized control or to have otherwise obtained unlawfully, are competent evidence if the photographs are admissible into evidence. * * * The photographic record, when satisfactorily identified, is as admissible in evidence as the property itself.

The facts presented at the pretrial evidentiary hearing raised the issue of the arresting officer's neglect. Tasker claimed he had asked the officer to bring the items seized to that hearing. The officer denied Tasker ever having made this request and did not subsequently testify at the trial. No further mention was made of the officer's responsibility for the items seized. The issue of negligence on the part of the police is not established by the record.

We hold that it was completely within Shopko's rights to retain their merchandise as they did and to dispose of it before trial. Minn.Stat. § 609.523, subds. 3 and 4 (1986), articulate the circumstances under which stolen property may be returned to the owner; the fact that the items were reshelved and sold does not contravene the statute.

No jury instruction was given to offset the potentially prejudicial effect of the lost evidence as in *State v. McGill*, 324 N.W.2d 378 (Minn.1982). In *McGill*, as in this case, the state failed to collect certain physical evidence, i.e., light bulb fragments that the defendant claimed would help establish his innocence in an arson case. *Id.* at 379. The Minnesota Supreme Court affirmed defendant's conviction, in part because the lost evidence lacked materiality and in part because the trial court gave the jury a cautionary instruction relating to the lost evidence. *See id.* The jury was instructed:

> [I]f it found that there was material evidence which the state without justification failed to preserve, then the jury could infer that the material evidence would be unfavorable to the state.

*Id.* at 379.

Tasker did not request such an instruction at trial or raise the issue in a post-trial motion. Tasker has waived his right to raise this issue on appeal by failing to raise it below. *See State v. Laforge*, 347 N.W.2d 247, 251 (Minn.1984); Minn.R.Crim.P. 26.-03, subd. 18(3).

## II

■ Nelson testified that he saw Tasker take the lure directly from the peg and put it inside his shirt. Tasker's explanation that the magazines and lure were actually previous purchases made at another store is refuted by the register tapes, which show none of the claimed purchases. The evidence is sufficient to sustain his conviction.

It is axiomatic that on review of a jury verdict, the court must interpret the evidence presented in the light most favorable to the verdict and will assume that the jury disbelieved any testimony in conflict with the result it reached. *See State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978).

## DECISION

The jury's verdict of guilty was sufficiently supported by the evidence, and ap-

pellant was not denied due process of the law.

Affirmed.